DAVID R. ONGARO, State Bar No. 154698
AMELIA D. WINCHESTER, State Bar No. 257928
ONGARO BURTT & LOUDERBACK LLP
650 California Street, Fifth Floor
San Francisco, CA  94108
Telephone:  (415) 433-3900
Facsimile:  (415) 433-3950

Attorneys for Plaintiff
MAHBOD KHALILPOUR
and Plaintiff Class

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAHBOD KHALILPOUR, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br> Defendant. | Case No. C 09-02712 RS <br><br> **NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** <br><br> Judge: Hon. Richard Seeborg <br> Date: June 21, 2012 <br> Time: 1:30 p.m. <br> Courtroom: 3, 17th Fl. |

# TABLE OF CONTENTS

I.    ISSUES TO BE DECIDED .......................................................................... 1

II.   INTRODUCTION .................................................................................... 1

III.  PROCEDURAL AND FACTUAL BACKGROUND ......................................... 3

    A.   The Class Action .......................................................................... 3

    B.   The Parties' Mediation and Subsequent Negotiations ........................... 4

    C.   Verizon Moved to Compel Arbitration of Plaintiff's Individual Claims ............... 4

IV.   SETTLEMENT TERMS ........................................................................... 5

    A.   Class Relief .................................................................................. 6

        i.    Class Members who Repurchased Games .................................. 6

        ii.   Class Members who did not Repurchase Games ......................... 6

    B.   Changes to the Verizon Website and Written Materials ........................... 7

    C.   Release ........................................................................................ 7

    D.   Notice and Claims Administration ..................................................... 7

    E.   Content of Notice to the Class Members ............................................. 8

    F.   Oversight and Enforcement .............................................................. 8

    G.   Attorneys' Fees and Expenses and Incentive Award ............................... 9

V.    ARGUMENT ........................................................................................ 9

    A.   The Proposed Settlement Should be Preliminarily Approved ..................... 9

        i.    The Proposed Settlement is Fair because it was the Product of Arm's Length Non-Collusive Negotiations ............................... 10

        ii.   The Proposed Settlement is Reasonable and Adequate ............... 11

        iii.  The Class Notice is Adequate .............................................. 15

    B.   The Class Should be Certified for Settlement Purposes .......................... 16

        i.    Numerousity .................................................................... 16

        ii.   Commonality ................................................................... 17

        iii.  Typicality ....................................................................... 18

        iv.   Adequacy ....................................................................... 18

i

1

v.     Predominance .............................................................................................. 19

vi.    Superiority .................................................................................................. 20

VI.    CONCLUSION ............................................................................................................. 21

**MOTION FOR PRELIMINARY APPROVAL**
**Case No. C 09-02712 RS**

1

# TABLE OF AUTHORITIES

2

**Cases**

3
*Adams v. Inter-Con Security Sys., Inc.*
 No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)........................................ 11

4
*Alaniz v. California Processing, Inc.*
5
 73 F.R.D. 269 (C.D. Cal. 1976) .......................................................................................... 10

6
*Amchem Products, Inc. v. Windsor*
 521 U.S. 591 (1997).................................................................................................. 16, 19

7
*AT&T Mobility LLC v. Concepcion*
8
 131 S. Ct. 1740 (2011)...................................................................................................... passim

9
*Churchhill Village, L.L.C. v. General Electric*
 361 F.3d 566 (9th Cir. 2004)........................................................................................... 15

10
*Class Plaintiffs v. City of Seattle*
11
 955 F.2d 1268 (9th Cir. 1992).......................................................................................... 9

12
*Dukes v. Wal-Mart, Inc.*
 509 F.3d 1198 (9th Cir. 2007)...................................................................................... 17, 18

13
*Ellis v. Naval Air Rework Facility*
14
 87 F.R.D. 15 (N.D. Cal. 1980).......................................................................................... 10

15
*Gatreaux v. Pierce*
 690 F.2d 616, 621 n.3 (7th Cir. 1982).............................................................................. 10

16
*Hanlon v. Chrysler Corp.*
17
 150 F.3d 1011 (9th Cir. 2008)........................................................................................ passim

18
*Hanon v. Dataproducts Corp.*
 976 F.2d 497 (9th Cir. 1992)........................................................................................... 18

19
*In re Austrian and German Holocaust Litig.*
20
 80 F. Supp. 2d 165 (S.D.N.Y. 2000)................................................................................ 11

21
*In Re M.L. Stern Overtime Litigation*
 No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) ................. 9

22
*In re United Energy Corp. Solar Power Modules Tax Shelter*
 *Investments Securities Litigation*
23
 122 F.R.D. 251 (N.D. Cal. 1988)..................................................................................... 19

24
*Mendoza v. Tucson Sch. Dist. No. 1*
25
 623 F.2d 1338 (9th Cir. 1980).......................................................................................... 15

26
*Officers for Justice v. Civil Serv. Comm'n*
 688 F.2d 615 (9th Cir. 1982)........................................................................................ 9, 10

27
*Speed Shore Corp., v. Denda*
28
 605 F.2d 469 (9th Cir. 1979)............................................................................................ 9

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003)................................................................ 16

*Sullivan v. Chase Inv. Servs., Inc.*
  79 F.R.D. 246 (N.D. Cal. 1979)............................................................ 17

*West v. Circle K Stores, Inc.*
  No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ................................ 9, 17, 20

*Wiener v. Dannon Co., Inc.*
  255 F.R.D. 658 (C.D. Cal. 2009) .......................................................... 17

*Zinser v. Accufix Research Inst., Inc.*
  253 F.3d 1180 (9th Cir. 2001)............................................................. 20

**Statutes**

California Business and Professions Code section 17200 ................................................. 3, 14, 17

California Business and Professions Code section 17500 ................................................. 3, 14, 17

**Rules**

Federal Rule Civil Procedure 23(a)................................................................. 16

Federal Rule Civil Procedure 23(b)(3).............................................................. 20

Federal Rule Civil Procedure 23(c)(2).............................................................. 15

Federal Rule Civil Procedure 23(a)(2).............................................................. 17

Federal Rule Civil Procedure 23(a)(4).............................................................. 18

**MOTION FOR PRELIMINARY APPROVAL**
**Case No. C 09-02712 RS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 21, 2012 at 1:30 p.m. or as soon thereafter as counsel may be heard in Department 17, in the Courtroom of the Honorable Richard Seeborg, in United States District Court of the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff Mahbod Khalilpour, will and hereby does move the Court for an order granting his Motion for Preliminary Approval of Class Action Settlement.

Plaintiff makes this Motion for Preliminary Approval on the grounds that the settlement is fair, adequate, and reasonable and otherwise satisfies the requirements for preliminary approval. In addition, because the proposed class meets the requirements of Federal Rule of Civil Procedure 23, the class should be certified for settlement purposes.

Plaintiff bases this Motion upon this Notice of Motion and Motion for Preliminary Approval, the accompanying Memorandum of Points and Authorities, Declaration of David R. Ongaro, the Settlement Agreement and exhibits, all pleadings and records on file herein, and such other documentary evidence or arguments as may be presented to the Court prior to or at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. ISSUES TO BE DECIDED**

1. Does the class action settlement meet the standard for preliminary approval?

2. Should the class be certified for settlement purposes?

**II. INTRODUCTION**

Plaintiff Mahbod Khalilpour ("Plaintiff" or "Khalilpour") brought a class action lawsuit against Defendant Cellco Partnership d/b/a Verizon Wireless ("Defendant" or "Verizon") for claims relating to his purchase of Unlimited games, which he downloaded onto his Verizon cellular handset. Plaintiff claimed Verizon represented that Unlimited games were in fact "unlimited," or could be played indefinitely, when in actuality a subscriber lost his or her Unlimited game when the subscriber changed his or her cellular telephone.

1

After over three years of highly contentious litigation and attempts at settlement, the parties in this matter have reached a settlement and Plaintiff now moves this Court to preliminarily approve it.  The settlement in this case applies to a class of over one million California residents who purchased Unlimited games from Verizon and subsequently changed their Verizon handsets.  If approved, Class members will receive varying forms of relief depending on whether they believed the Unlimited games they purchased would be transferrable and whether they in fact repurchased Unlimited games after changing handsets.  The settlement also requires Verizon to make significant changes to the representations made to all future customers of Unlimited games, including modifications to Verizon's written marketing materials and changes to the Verizon website to clearly disclose to customers that Unlimited games are not transferable.

The proposed settlement was the result of arm's length and non-collusive negotiations. The parties participated in mediation with a well-respected mediator where they developed the basic structure of the settlement, however, the parties continued negotiating long after the mediation.  The parties ultimately signed a memorandum of understanding, which was intended to resolve Plaintiff's claims.  Subsequently, the Supreme Court issued *AT&T Mobility, LLC v. Concepcion*, overturning long-standing California authority holding that class action waivers in arbitration agreements were unenforceable.  Verizon attempted to withdraw from the settlement, and the parties engaged in extensive motion practice regarding whether Plaintiffs' claims could be compelled to arbitration on an individual basis.  Although Verizon was unsuccessful, it appealed the decision, and the parties ultimately decided – in light of the inherent risks in continuing litigation – to finalize the settlement documentation.

The ultimate result of the parties' extensive negotiations was a settlement agreement that is extremely fair, reasonable and adequate to class members, and which accounts for the strengths of Plaintiff's case, as well as the uncertainties and risks involved in continuing litigation and with the appeal.  The class members – particularly in light of the size of the class – are afforded substantial relief.  In addition, the class notice, which will be issued directly to current Verizon subscribers and via publication to previous Verizon subscribers, complies with Rule 23(e).

2

In addition to the fairness, reasonableness, and adequacy of the settlement agreement, the proposed class meets the requirements for certification for purposes of settlement. All of the Rule 23(a) elements of class certification – numerousity, commonality, typicality, and adequacy of representation – are satisfied. In addition, the class meets the predominance and superiority factors under Rule 23(b).

In sum, the settlement meets all of the requirements for preliminary approval, and Plaintiff respectfully requests that the Court approve the settlement.

## III.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   The Class Action

This class action lawsuit was originally filed in the Alameda County Superior Court on April 24, 2009. On June 18, 2009, Verizon removed the case to the United States District Court for the Northern District of California. *See* Dkt. No. 1. On September 1, 2009, Plaintiff filed a First Amended Complaint ("FAC"). *See* Dkt. No. 15. In his FAC, Plaintiff alleged claims against Verizon for violations of California Business and Professions Code sections 17200 and 17500, the California Consumer Legal Remedies Act, Negligent Misrepresentation, and Intentional Misrepresentation. *See id*.

Plaintiff's allegations related to his purchase of Get it Now games from Verizon under an "Unlimited option." Verizon Unlimited games are available for subscribers to download onto their Verizon cellular handsets. Plaintiff alleged that Verizon represented – through its website, Customer Agreement, Welcome Guide, and handset onto which the game was downloaded – that the "Unlimited" option for games was in fact unlimited. Specifically, Verizon represented that the Unlimited option games provided access to a game for whenever and however long a customer wished to play for a one-time fee and did not provide disclaimers stating that if a customer purchased an "Unlimited" game, that the use of the game only applied to the original handset onto which the game was downloaded. Conversely, with regard to Subscription option games (which came under a different pricing option), Plaintiff alleged that Verizon expressly notified subscribers that games were not transferrable to a subsequent handsets. Plaintiff further alleged that because Verizon did not apply a customer's purchase of an Unlimited game to a

1    subsequent handset without requiring the customer to re-purchase the game, that Verizon's

2    representations were misleading.

3        Plaintiff sought to represent a putative class of similarly situated individuals in California

4    who purchased a Get it Now game using the Unlimited option from Verizon and subsequently

5    replaced the original handset onto which the Unlimited option game was downloaded, anywhere

6    in the United States, starting from four years prior to April 24, 2009.

7        Verizon denied, and continues to deny, all of Plaintiff's allegations in the FAC.

8    **B.      The Parties' Mediation and Subsequent Negotiations**

9        On December 21, 2009, the parties participated in a full-day mediation session with the

10   Honorable William J. Cahill (Retired).  At the conclusion of the initial mediation, the parties had

11   made progress on some issues, but remained at an impasse with regard to a number of other

12   issues.  Judge Cahill continued to work with the parties after the mediation.

13   In or around August 2010, the parties signed and entered into a confidential memorandum of

14   understanding, which settled and resolved the class claims.  Thereafter, the parties began to

15   negotiate and complete the associated settlement documents and engaged in numerous rounds of

16   negotiations.

17       Prior to and after the parties' mediation, Plaintiff served extensive written discovery

18   requests, including confirmatory discovery as well as multiple deposition notices.  Over the

19   course of the litigation, Verizon provided Plaintiff with more than 2500 pages of documents and

20   responses to written discovery requests.

21   **C.      Verizon Moved to Compel Arbitration of Plaintiff's Individual Claims**

22       While the parties were in the process of finalizing the associated settlement documents,

23   on April 27, 2011, the United States Supreme Court issued its ruling in *AT&T Mobility LLC v.*

24   *Concepcion*, 131 S. Ct. 1740 (2011) (hereafter "*Concepcion*").  In *Concepcion*, the Supreme

25   Court upheld an arbitration clause containing a class action waiver, which the plaintiffs had

26   challenged on the ground that the waiver was unconscionable under California state law.  In

27   overruling long-standing California precedent that class-action waivers in arbitration agreements

28   are unconscionable, the Court upheld the arbitration clause containing the class action waiver,

reasoning that the FAA preempted California state law.

The *Concepcion* ruling was extremely significant to this case because Verizon claimed that Plaintiff had signed an arbitration agreement containing a class-action waiver. On September 16, 2011, Verizon abandoned its settlement with Plaintiff and moved to compel arbitration of the case and stay the proceedings based on *Concepcion*. *See* Dkt. No. 58. Verizon argued that Plaintiff should be compelled to arbitrate his claims against Verizon – on an individual basis – because Plaintiff had purportedly signed Customer Agreements with Verizon, which compelled him to arbitrate his claims. *See id*. In effect, Verizon sought to forever extinguish Plaintiff's class claims and all class relief that Plaintiff's counsel had negotiated for the class. Plaintiff vigorously opposed Verizon's Motion to Compel Arbitration, and filed a Motion to Enforce the Settlement Agreement based on the Memorandum of Understanding the parties had signed in August 2010. After extensive briefing, the Court – on January 5, 2012 – issued an order denying Verizon's Motion to Compel Arbitration and granting Plaintiff's Motion to Enforce the Settlement Agreement. *See* Dkt. No. 79. On February 6, 2012, Verizon appealed this decision. Thereafter, the parties began preparing for the appeal.

After commencing the appellate process and weighing the benefits and risks of continuing with the litigation, the parties returned to their negotiations and have since reached a settlement of Plaintiffs' claims. Verizon, however, has yet to dismiss the appeal.

## IV.    SETTLEMENT TERMS

The parties' settlement applies to a putative Settlement Class of California residents who purchased Unlimited Get it Now game(s) on a Verizon handset and subsequently purchased one or more handsets that were activated on the same mobile telephone line between January 1, 2004 and the date of preliminary approval of the settlement agreement. *See* Declaration of David R. Ongaro (hereafter "Ongaro Declaration"), ¶2, Ex. 1 (hereafter "Settlement Agreement") at § 1.17. As explained in more detail below, the settlement provides Class members with the following relief: Class Members who submit forms indicating that they believed Unlimited option Get it Now games would be transferable to a new handset will receive $15, *regardless* of whether the Class Member repurchased the game(s). Class Members who repurchased games on their new

5

handsets will obtain either 1) the value of the repurchased games they list (up to $35), or 2) the value of <u>all</u> of the repurchased games if they submit proofs of purchase.

The average cost of an Unlimited option Get it Now game is approximately $7.70. Accordingly, all Class Members will be eligible to receive a refund for approximately two games (regardless of the number of games they purchased) <u>and</u> Class Members that repurchased games are eligible to receive up to the full value of all repurchased games. The Settlement, therefore, accounts for the fact that Class Members may have lost the value of games they purchased (but chose not to repurchase), and for all additional payments Class Members made to repurchase games if they believed the games would be transferable.

### A. Class Relief

#### i. Class Members who Repurchased Games

Class Members who bought one or more games for a handset, subsequently purchased a handset ("subsequent handset"), which was activated on the same line, and then repurchased the same games for the subsequent handset will receive one of three forms of relief from the Settlement. Class Members who timely submit a valid Claim Form stating that they believed the Unlimited Get It Now game(s) they purchased on a handset would be transferable to their subsequent handset will receive $15. *See* Settlement Agreement, 3.1. Settlement Class Members who timely submit a valid Claim Form and list the games they repurchased after acquiring a new handset will receive the value of the listed games, up to a maximum of $35 (subject to confirmation based on Verizon's records). *See id.* Settlement Class Members who timely submit a valid Claim Form and include proofs of purchase for the games they repurchased after acquiring a new handset will receive the total value of the repurchased games. *See id.*

#### ii. Class Members who did not Repurchase Games

Settlement Class Members who bought one or more games for their initial handset, subsequently purchased a handset ("subsequent handset") which was activated on the same mobile telephone line, but did <u>not</u> repurchase the game(s) for their new handset will receive the following relief. Class Members will receive $15 if they timely submit a valid claim form stating that they believed the Unlimited Get It Now game(s) they purchased on their initial handset

would be transferable to a subsequent handset and were deterred from downloading the previously purchased game(s) to the subsequent handset. *See* Settlement Agreement 3.2. As a result, Class Members who did not repurchase any games will still be refunded for approximately two games if they believed the games would be transferable.

**B.      Changes to the Verizon Website and Written Materials**

Pursuant to the terms of the Settlement Agreement, Verizon has agreed to make changes to the Frequently Asked Questions portions of its websites. *See* Settlement Agreement § 3.4. Verizon has agreed to state affirmatively and conspicuously on any sections of its websites pertaining to Unlimited Get It Now Games that downloaded content and applications may only be used on the device to which they are downloaded and that if the user changes devices, the user will need to re-download the content and pay for the game again. *See id.* Verizon will also provide this disclaimer in written materials it distributes to subscribers at Verizon Wireless stores. *See id.*

**C.      Release**

Plaintiff and any member of the Settlement Class who have not opted out of the settlement are releasing claims, whether known or unknown, that were or could have been alleged or asserted in the Action regarding any alleged misrepresentations or failures to disclose with respect to Unlimited Get It Now games and regarding the alleged failure to transfer Unlimited Get It Now games to subsequent handsets. *See* Settlement Agreement § 1.12.

**D.      Notice and Claims Administration**

As part of the settlement, Verizon has agreed to retain a third-party settlement administrator to administer the Class Settlement, and to be solely responsible for the fees and expenses of the administrator and for the costs of providing notice to the Class. *See* Settlement Agreement §§ 5.1, 5.12. Verizon will give notice to Class Members who are current Verizon customers and who receive their bills through U.S. mail by sending them a summary notice as an insert in their bills. *See* Settlement Agreement § 5.3. Verizon has also agreed to include copies of the Claim Form, if it is feasible. Verizon will give notice to Class Members who are current Verizon customers and who receive their bills through email by sending them a summary notice

7

through an email, which will contain a link to the electronic version of the Claim Form, which can be filled out online. *Id.* at 5.4  Two reminder notices will be sent out after the first notice. *Id.* at 5.8.  Class Members who receive their bills via U.S. mail will receive a reminder about the Settlement on two bills. *Id.* Class members who receive their bills via email will receive two reminder notices through email, apart from their bills, and will have the opportunity to opt to not to receive further emails. *Id.*

In addition to the notice provided to current Verizon customers, a notice of settlement will be provided through a link on the Legal Notices page of Verizon's website. *Id*. at § 5.5.  Further, the summary notice will be published in one Sunday edition of the following publications: San Francisco Chronicle, Los Angeles Times, Sacramento Bee, San Diego Union Tribune, San Jose Mercury News, and the Redding Record Searchlight. *Id*.  Finally, a copy of the full notice and claim form will be available on the Settlement website and will be mailed at no charge to Class Members who call a toll-free number, which will be established at Verizon's expense. *Id*. at 5.6. Pursuant to the Settlement Agreement, Class Members will have 180 days after the Court's approval of the final Settlement Agreement to submit a Claim. *See id*. at § 5.10.

**E.      Content of Notice to the Class Members**

Both the summary notice and notice of pendency of class action settlement: 1) inform Class Members of the basis of the claims; 2) identify who is included in the class; 3) identify who is eligible to receive a payment and the potential for recovery; 3) describe how Class Members may exclude themselves from the settlement; 4) notify Class Members of their right to object to the Settlement; 5) include the contact information, including the website and a toll-free number for the Settlement Administrator, who Class members can contact for more details; and 6) notify Class Members that they won't be able to sue Verizon about the Claims in this case unless they exclude themselves. *See* Ongaro Declaration, ¶ 2, Settlement Agreement, Exs. B1, B2.

**F.      Oversight and Enforcement**

The Settlement Agreement provides that Class Counsel may review the work performed by the Settlement Administrator in administering and implementing the Settlement. *See* Settlement Agreement § 11.15.  In addition, Verizon has agreed to obtain a declaration from the

8

1   Settlement Administrator, which states the number of timely submitted valid claims for each

2   form of class relief, and confirms that all valid claims were paid by Verizon.

3         **G.**      **Attorneys' Fees and Expenses and Incentive Award**

4         As part of the Settlement, Verizon has agreed not to object to an award of attorneys' fees

5   and expenses of up to $645,000 and a class representative service award of up to $5,000.  *See*

6   Settlement Agreement § 9.1.  Class Counsel intends to move the Court with supporting evidence

7   demonstrating the reasonableness of the attorneys' fees requested and their justification in

8   conjunction with the final approval of the settlement as it is subject to the Court's final review

9   and approval.  In addition, Class Counsel will also seek the Court's approval of the class

10   representative service award of up to $5,000.

11   **V.**     **ARGUMENT**

12         **A.**      **The Proposed Settlement Should be Preliminarily Approved**

13   In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored.  *Class*

14   *Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda*,

15   605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially

16   favored as a matter of second public policy.  Settlement agreements conserve judicial time and

17   limit expensive litigation.").  It is within the broad discretion of the trial court to approve a class

18   action settlement.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

19   1982).

20         The approval of a class action settlement takes place in two stages: preliminary approval

21   and final approval.  *West v. Circle K Stores, Inc*., No. 04-0438, 2006 WL 1652598, at *2 (E.D.

22   Cal. June 13, 2006).  At the preliminary approval stage, the Court "must make a preliminary

23   determination on the fairness, reasonableness, and adequacy of the settlement terms and must

24   direct the preparation of the notice of the certification, proposed settlement, and date of the final

25   fairness hearing."  *See In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009

26   WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth §

27   21.632 (2004)).  During the preliminary process, the Court simply determines "whether there is

28   any reason to notify the class members of the proposed class settlement and to proceed with the

9

fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  The Court's review is "limited to the extent necessary to reach a seasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1057 (9th Cir. 2008)*; Alaniz v. California Processing, Inc*., 73 F.R.D. 269, 273 (C.D. Cal. 1976).

        As set forth below, the proposed Settlement satisfies the standard for preliminary approval.  It is fair, reasonable, and adequate, which places it squarely within the range of possible approval.   In addition, the class notice falls within the requirements of Rule 23(e).

> ### i.       The Proposed Settlement is Fair because it was the Product of Arm's Length Non-Collusive Negotiations

        The requirement that the proposed Settlement be conducted by arm's-length, and non-collusive negotiations protects the proposed Class Members.  Generally, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval."  Newberg § 11.41; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" given to settlement reached after hard-fought negotiations).

        The proposed Settlement in this case is presumptively fair because it was reached through years of arms' length contentious negotiations and there is nothing to suggest that there was any collusion between the parties.  Here, the parties began negotiating a settlement after written discovery had been served and well over a thousand documents had been produced by Verizon.  Thereafter, the parties participated in a mediation, which was conducted by Judge William Cahill (Retired).  Judge Cahill was fully informed of the complex issues in the case, and has been recognized as one of the top mediators in the Bay Area.  By this time, Plaintiff's counsel, all experienced class action attorneys, had a clear understanding of the strengths and weaknesses of the case.  The mediation served as a starting point for the parties' proposed Settlement

Agreement, however, it was followed by years of heated negotiations over various details of the settlement. The fact that the negotiations were prompted – and overseen - by an experienced mediator strongly evidences the non-collusiveness of the settlement. *See Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007); *In re Austrian and German Holocaust Litig.*, 80 F. Supp. 2d 165, 173-74 (S.D.N.Y. 2000).

In August 2010, the parties reached a settlement and signed a Memorandum of Understanding. Following that agreement, the parties began negotiating the content of the associated settlement documents.

In April 2011, in the midst of the parties' continuing negotiations, the United States Supreme Court issued *ATT Mobility LLC v. Concepcion.* Thereafter – in September 2011 – Verizon moved to compel arbitration of Plaintiff's individual claims, relying on *Concepcion* in support of its motion. Plaintiff vigorously opposed Verizon's motion and filed a Motion to Enforce the Settlement Agreement, which was granted. Verizon promptly appealed the decision. Ultimately, after weighing the risks and benefits of the continued litigation, the parties returned to their negotiations.

Now, after years of discussions, Verizon's production of nearly one-thousand additional documents and responses to confirmatory discovery requests, the parties have resolved all terms relating to the Settlement. The final proposed Settlement is indisputably the product of non-collusive arm's-length negotiations.

### ii.     The Proposed Settlement is Reasonable and Adequate

In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon*, 150 F.3d at 1026. Here, the proposed Settlement Agreement affords the Class substantial monetary and injunctive relief, accounts for the continued risks of litigation, and therefore satisfies the reasonable and adequacy standards.

The Settlement Agreement provides Class Members with considerable relief.  As a preliminary matter, the Class itself is extremely large; it consists of well over one million members.  Between January 1, 2007 and May 13, 2012, 1,094,017 subscriber lines[1] purchased one or more Unlimited option Get it Now games for their initial handset, acquired a new handset, and did not repurchase any of the same games for the second handset.  Between January 1, 2007 and May 13, 2012, 194,550 subscriber lines purchased one or more Unlimited option Get it Now games for their initial handset, acquired a new handset, and then repurchased some or all of the same games for the second handset.  This data represents only a portion of the Class period.[2]  Any Class Members who believed that Unlimited option Get it Now games were transferable – regardless of whether the Class Member ultimately repurchased a game on a subsequent handset – will be entitled to $15, the price of approximately two Unlimited option Get it Now games.  Class Members who repurchased the games may receive anywhere from $35 to full refunds for all games they repurchased.  The potential Class relief, particularly in light of the class size of over 1,000,000 members, is significant.  Further, Verizon will make changes to the Frequently Asked Questions portions of its websites  –  www.verizonwireless.com and www.vzw.com – as well as to the written marketing materials it provides to prospective Verizon Customers at Verizon stores to affirmatively and conspicuously disclose that Unlimited Get It Now Games may only be used on the device to which they are downloaded, and that if a user changes devices, the user will need to re-download the content and pay for the game again.

In addition, all current subscribers of Verizon who are Class Members will be receiving notice of the settlement.  Class Members who receive their bills by mail will receive the Summary Notice as an insert to their bill, as well as a copy of the claim form.  Class Members who are currently Verizon customers and who receive their bills electronically will receive a copy of the Summary Notice via email, which links to the Settlement website where Class Members can fill

---

[1] Verizon states that it maintains its records by "subscriber lines" rather than subscriber name.  According to Verizon "subscriber lines" are "roughly synonymous with a mobile telephone number, although a subscriber can change its mobile telephone number over time and have it still belong to the same subscriber."

[2] Verizon states that its "data warehouse" only dates back to 2007.  Given that the Class period is from 2005 to the present, these numbers represent only a portion of the Class Members.

out the electronic claim form.  Previous Verizon subscribers will receive notice of the Settlement by publication and through Verizon's website.  According to Verizon's SEC filing, the churn rate for Verizon customers during recent years has been less than 1.5% for every three months.[3]

Plaintiff contends, and Verizon does not contest, that the amount allocated for Class Counsel Attorneys' fees and expenses and the Class Representative service award are reasonable and appropriate.  Regardless, both the attorneys' fees and expenses and class representative service award amounts are subject to the Court's approval at the final settlement hearing.

While Plaintiff maintains that his case was strong and that Verizon's representations regarding Unlimited option Get it Now games were deceptive, Verizon has, and continues to vigorously dispute Plaintiff's allegations.  In addition to disputing the validity of Plaintiff's claims, Verizon has asserted that Plaintiff signed an arbitration clause on numerous occasions containing the following, or substantially similar, language:

> We each agree to settle disputes only by arbitration or in small claims court as provided below.  There's no judge or jury in arbitration, but an arbitrator can award the same damages and relief, and must honor the same limitations in this agreement, as a court would.  If an applicable statute provides for an award of attorney's fees, an arbitrator can award them too.
> Except for qualifying small claims court cases, any controversy or claim arising out of or relating to this agreement, or any prior agreement for Verizon Wireless with us . . . or any product or service provided under or in connection with this agreement or such prior agreement, or any advertising for such products or services, will be settled by one or more neutral arbitrators before the American Arbitration Association ("AAA") or Better Business Bureau ("BBB").  You can also bring any issues you may have to the attention of federal, state, or local government agencies and if they can, if the law allows, seek relief against us on your behalf.
> ***This agreement doesn't permit class arbitrations even if those procedures or rules would (emphasis added).***

This arbitration clause and class action waiver was contained in Verizon's standard Customer Agreement, which applied to any claims arising out of, or relating to, the Customer Agreement or any products or services provided by Verizon.  Verizon argued that because the

---

[3] According to Verizon's SEC Form 10-Q, the churn rate for retail customers for the three months ending March 31, 2011 was 1.33% and was 1.24% for the three months ending March 31, 2012.  The churn rate for retail postpaid customers (or those individual lines of service for which a customer pays in advance a monthly access charge in return for a timely voice and/or data service allowance) for the three months ending March 31, 2011 was 1.01%, and .96% for the three months ending March 31, 2012.

Customer Agreement (and thus, the class action waiver clause) applied to any claims arising out of or relating to products or services provided by Verizon, that Plaintiff was required to file his claims, which related to Verizon's Unlimited games product, in arbitration.

Critically, because the class action waiver clause that Plaintiff purportedly signed was in Verizon's standard Customer Agreement, which is provided to all customers, it is questionable whether Plaintiff – or any other Verizon subscriber – could have brought a class action lawsuit against Verizon for the claims asserted by Plaintiff once class action waivers became legally enforceable under *Concepcion*.  In light of the foregoing, the settlement negotiated by Plaintiff likely provides the only class relief class members can –  or will – ever be entitled to.  In the event that the settlement is not approved, class members will be forever precluded from obtaining relief on a class-wide basis due to Verizon's class action waiver clause.  Accounting for this bar to relief, the settlement itself provides exceptional relief to class members.

In addition, and apart from the arbitration issue, Plaintiff faced certain difficulties relating to Class Certification, including issues relating to reliance.  For example, Plaintiff alleged claims for violations of California Business and Professions Code §§ 17200 and 17500.  Following Proposition 64, a plaintiff must be someone "who suffered injury in fact and has lost money or property as a result of the unfair competition."   Cal. Bus. & Prof. Code §§ 17200, 17500. Although Plaintiff is confident he could have demonstrated that the case was amenable to class treatment, it was uncertain whether Plaintiff could have demonstrated that class members relied on Verizon's "Unlimited" representations, and therefore suffered injury by purchasing – and subsequently repurchasing – the Unlimited Get it Now games.  Therefore, like any motion for class certification, it would have been risky for Plaintiff to proceed.

In sum, Plaintiff believes he would have ultimately prevailed, however, litigating the case would have been time-consuming, expensive, and like most all class actions, risky.  As a class action, the case was complex, and given the issues involved, the case may have been litigated for years.  Class counsel engaged in numerous rounds of discovery, served written confirmatory discovery requests and deposition notices, and reviewed thousands of Verizon documents.  Based on their experience with consumer class action lawsuits, Plaintiff's counsel evaluated these

various issues, including the strengths and weaknesses of the case, the fact that it had not been certified, the consequences of not settling in light of *Concepcion*, and the pending appeal on the arbitration issue, and concluded that the Settlement is in the best interests of Class members.

Given that the Settlement is fair, reasonable, and adequate, Plaintiff respectfully submits that it qualifies for preliminary approval.

### iii.    The Class Notice is Adequate

Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure provides that, [t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Further, the court should direct "the best notice practicable under the circumstances, including direct notice to all class members who can be identified through reasonable effort."  *See* Fed. R. Civ. P. 23(c)(2).  A notice of settlement is "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The proposed Notice to the Class Members fully satisfies these requirements.  In this case, the parties have agreed that summary notice of the Settlement will be provided directly to Class Members who are current Verizon customers and who receive their bills through the mail as an insert to their bills.  The parties have further agreed that Class Members who are current Verizon customers and who receive their bills via email will directly receive summary notice via email.  For the Class Members who are no longer Verizon customers, notice will be provided by publication through six major newspapers in California, and on Verizon's website.  A detailed notice and claim form will be available on a dedicated settlement website, and will be mailed at no charge to Class Members who call a toll-free number to be established at Verizon's expense.

The content of the summary and notice of pendency of class action settlement comply with Rule 23.  The notices inform Class Members of: 1) the basis of the claims; 2) who is included in the class; 3) who is eligible for payment and the potential for settlement recovery; 3) describe how Class Members may exclude themselves from the settlement; 4) notify Class

15

1   Members of their right to object to the Settlement; 5) include the contact information, including

2   the website and a toll-free number for the Settlement Administrator, which Class members can

3   contact or view for more details; and 6) notifies Class Members that they won't be able to sue

4   Verizon about the Claims in this case unless they exclude themselves from the Settlement.

5        Both notices adequately describe the terms of the settlement in sufficient detail to alert

6   any person with an adverse view point to be heard.

7        **B.    The Class Should be Certified for Settlement Purposes**

8        When "parties reach a settlement agreement prior to class certification, courts must peruse

9   the proposed compromise to ratify . . . the propriety of the certification." *Staton v. Boeing Co.*,

10  327 F.3d 938, 952 (9th Cir. 2003). To be certified, a class must meet the certification

11  requirements of Rule 23. *Hanlon*, 150 F.3d at 1019. In determining whether the class may be

12  certified, however, the court may appropriately consider that there will be no trial. *Amchen*

13  *Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only

14  class certification, a district court need inquire whether the case, if tried, would present intractable

15  management problems . . . for the proposal is that there be no trial.").

16       Under Rule 23(a), a class may be certified if: 1) numerosity exists; 2) common questions

17  of law and fact are present; 3) the class members' claims are typical of those of the class; and 4)

18  there is an adequate class representative. *See* Fed. R. Civ. P. 23(a). Even if a class action

19  satisfies the Rule 23(a) requirements, it must also fulfill one of the requirements set forth under

20  Rule 23(b) subdivisions 1-3. Under Rule 23(b)(3), a class action may be maintained if there is a

21  predominance of common questions of law and fact and a class action is superior to other

22  methods of adjudication. As set forth below, each of these requirements is met.

23       **i.    Numerosity**

24       Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is

25  impracticable." The numerosity requirement is met when it would be difficult or inconvenient

26  to join all members of the class. *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal.

27  2009). Although there is no numerical requirement, a class of one thousand members "clearly

28  satisfies the numerosity requirement." *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257

16

1    (N.D. Cal. 1979).

2        The Class in this case is defined as California residents who purchased Unlimited Get it

3    Now game(s) on a handset and subsequently purchased one or more new handsets that were

4    activated on the same mobile telephone line between January 1, 2004 and the date of preliminary

5    approval.  Between January 1, 2007 and May 13, 2012, 1,094,017 subscriber lines purchased one

6    or more Unlimited option Get it Now games for their initial handset, acquired a new handset, and

7    did not repurchase any of the same games for the second handset. Between January 1, 2007 and

8    May 13, 2012, 194,550 subscriber lines purchased one or more Unlimited option Get it Now

9    games for their initial handset, acquired a new handset, and then repurchased some or all of the

10   same games for the second handset.  As a result, the class consists of at least one million

11   members.  The numerosity factor is plainly satisfied.

12              **ii.    Commonality**

13       Rule 23(a)(2) requires that "there are questions or law of fact common to the class."  Fed.

14   R.Civ. Pro. 23(a)(2).  "[I]t is not necessary that *all* questions of law and fact be common."  *West*,

15   2006 WL 1652598, at *3 (citing *Hanlon*, 150 F.3d at 1019).  "The existence of shared legal issues

16   with divergent factual predicates is sufficient, as is a common core of salient facts coupled with

17   disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019.  The commonality

18   requirement is to be "construed permissively."  *Dukes v. Wal-Mart, Inc*., 509 F.3d 1198, 1177,

19   (9th Cir. 2007).

20       Common questions of fact exist among class members in this case because each individual

21   purchased at least one Unlimited option Get it Now game from Verizon, and subsequently

22   changed handsets.  Common legal issues, including whether Verizon's alleged conduct violated

23   California Business & Professions Code §§ 17200 and 17500, the California Consumer Legal

24   Remedies Act, and constituted negligent or intentional misrepresentations, exist among class

25   members.  Many questions were amenable to resolution on a class-wide basis including but not

26   limited to: 1) whether Verizon's representations regarding Unlimited Get it Now games were

27   deceptive; 2) whether Verizon's advertisements regarding Unlimited Get it Now games were

28   deceptive; 3) whether purchasers of the Unlimited Get it Now games relied on Verizon's

representations; 4) whether Verizon's representations caused damage to Class Members; 5) whether Class Members were entitled to injunctive relief.

In the absence of class certification and settlement, each Class Member would be forced to litigate his or her claims individually.  The commonality element is satisfied.

### iii.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  For typicality to exist, class representative plaintiffs must have claims "reasonably co-extensive with those of absent class members," but need not be "substantially identical."  *Hanlon*, 150 F.3d at 1020.  The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992).

Here, all class members, including Plaintiff Khalilpour, paid for Unlimited option Get it Now games and subsequently changed handsets.  While Mahbod Khalilpour re-purchased the Unlimited Get it Now game for his subsequent handset and other Class members may not have, the source of the injuries stems from the same alleged conduct – paying a premium price for an Unlimited game based on Verizon's alleged misrepresentations, and then losing the game upon changing handsets.  This is sufficient to meet the typicality requirement.  *See Dukes v. Wal-Mart, Inc*., 509 F.3d 1168, 1184 (9th Cir. 2007) ("Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality").

### iv.    Adequacy

Finally, Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4).  The adequacy factor contains two requirements: "(1) that the representative's party's attorney be qualified, experienced and generally be able to conduct the litigation; and (2) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class."  In re *United Energy Corp. Solar Power Modules Tax Shelter Investments Securities Litigation*, 122 F.R.D. 251, 257 (N.D. Cal. 1988).

Both of the adequacy factors are satisfied in this case. Plaintiff has retained counsel who are extremely experienced in consumer class action cases. Plaintiff's attorneys – Ongaro Burtt & Louderback LLP – have extensive class action, jury trial and consumer class action experience. *See* Ongaro Declaration, ¶¶ 3, 6. David Ongaro of Ongaro Burtt & Louderback LLP has prosecuted and defended a total of 31 multi-million dollar class action lawsuits across the country where he has acted as lead counsel. *See id.* at ¶ 5. Mr. Ongaro has been named a "Northern California Super Lawyer" by Law and Politics Magazine and has nearly 20 years of experience handling complex litigation matters. *See id.* at ¶ 4. In addition, Plaintiff's counsel has performed extensive work on the case, including by succeeding on a Motion to Enforce the Settlement Agreement in light of Verizon's Motion to Compel Arbitration. Further, Plaintiff's counsel has negotiated vigorously – over the course of years – to ensure that the Class receives maximum relief. As set forth above, the settlement is not collusive.

Further, Plaintiff's interests are in no way antagonistic or conflicting with the interests of other Class Members. Indeed, Plaintiff Khalilpour suffered the same injury as other Class Members when he purchased an Unlimited Get it Now game and lost it when he changed handsets. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("[A] class representative must be part of the class and 'possess the same interest and will suffer the same injury' as the class members."). He has dedicated his time and energy towards obtaining relief for the Class. Accordingly, Khalilpour is an adequate class representative.

### v.    Predominance

Rule 23(b)(3) requires that "questions of law or fact predominate over any questions affecting only individual members." "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022.

Given that this case depends on the legality of Verizon's uniform representations made to Class Members regarding Unlimited option Get it Now games, common issues predominate among class members. *See Weiner*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package). Class-wide adjudication is appropriate. Any potential individual damages issues – such as whether a Class Member actually repurchased an Unlimited game upon changing handsets – are traceable through Verizon's records and do not preclude a finding of predominance. *See e.g., West v. Circle K Stores, Inc.* No.04-0438, 2006 WL 1652598, at * 7-8 (E.D. Cal. June 13, 2006) (predominance inquiry satisfied despite individualized damages).

### vi. Superiority

Finally, Rule 23(b)(3) also provides that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are: (1) the class members' interests in controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001). If the parties have agreed to a pre-certification settlement, some of these factors are irrelevant. *Amchen*, 521 U.S. at 620.

Prosecuting this action as a class action is a superior method to all other available methods of adjudication. Given that the damages sought by each Class Member are not large (the average cost of an Unlimited game is $7.70), it is not economically feasible or judicially efficient for over one million class members to bring individual claims against Verizon. *Hanlon*, 150 F.3d at 1023. Plaintiff's counsel is unaware of any similar litigation pending regarding the issues in the instant case, and the forum is an adequate one. Finally, since the parties wish to certify the case for

20

settlement purposes only, the Court need not determine whether there will be "intractable management problems." *Amchen*, 521 U.S. at 620.  In light of these findings, a class action is a superior method for adjudicating this controversy.

**VI.   CONCLUSION**

For the all of the foregoing reasons, Plaintiff respectfully requests that the Court enter an order preliminarily approving the Class Action Settlement, order that notice shall issue to Class Members, and schedule a final fairness hearing.

DATED:  May 17, 2012          **ONGARO BURTT & LOUDERBACK LLP**


By: /s/ *David R. Ongaro*

David R. Ongaro
Attorneys for Plaintiff
MAHBOD KHALILPOUR

**MOTION FOR PRELIMINARY APPROVAL**
**Case No. C 09-02712 RS**