1   DAN MARMALEFSKY (CA SBN 95477)
    DMarmalefsky@mofo.com
2   MORRISON & FOERSTER LLP
    555 West Fifth Street
3   Los Angeles, California  90013-1024
    Telephone: 213.892.5200
4   Facsimile: 213.892.5454

5   PENELOPE A. PREOVOLOS (CA SBN 87607)
    PPreovolos@mofo.com
6   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
7   MORRISON & FOERSTER LLP
    425 Market Street
8   San Francisco, California  94105-2482
    Telephone: 415.268.7000
9   Facsimile: 415.268.7522

10  Attorneys for Defendant
    CELLCO PARTNERSHIP
11  d/b/a VERIZON WIRELESS

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16

| | |
|---|---|
| 17  MAHBOD KHALILPOUR, on behalf of himself and all others similarly situated, | Case No.    C 09-02712 RS |
| 18 | |
| Plaintiffs, | **DEFENDANT CELLCO PARTNERSHIP'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 19 | |
| 20  v. | |
| 21  CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS; and DOES 1 through 10, inclusive, | Date:   November 1, 2012 |
| 22  Defendants. | Time:   1:30 p.m. |
| 23 | Judge:  The Honorable Richard Seeborg |
| | Courtroom:  3, 17th Floor |

24

25

26

27

28

DEF.'S MEMO. IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.  C09-02712-RS
sf-3204519

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  BACKGROUND ....................................................................................................... 2

     A.   Plaintiff's Claims ............................................................................................ 2

     B.   Get It Now Games ........................................................................................... 2

     C.   The Settlement Negotiations ........................................................................... 4

     D.   The Settlement Class ....................................................................................... 5

     E.   Key Settlement Terms ..................................................................................... 5

     F.   Preliminary Approval ...................................................................................... 6

     G.   Class Notice .................................................................................................... 6

III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................ 7

     A.   The Settlement Is Entitled to a Presumption of Fairness ....................................... 8

     B.   Even Without a Presumption of Fairness, the Settlement Is "Fair,
         Reasonable, and Adequate" Under the Criteria Applied in the Ninth Circuit ........ 8

         1.   The Strength of Plaintiff's Case ................................................................... 9

         2.   Risk, Complexity, Duration, and Expense of Further Litigation .............. 11

         3.   Likelihood of Maintaining Class Certification ......................................... 11

         4.   Settlement Value ...................................................................................... 12

         5.   Extent of Discovery and Stage of the Proceedings .................................. 12

         6.   The Experience and Views of Counsel ..................................................... 13

         7.   The Reaction of Settlement Class Members ............................................. 13

         8.   The Settlement Is the Product of Arm's-Length Negotiations.................. 13

IV.  CONCLUSION ........................................................................................................ 14

1

# TABLE OF AUTHORITIES

2

3
**Page**

4
**CASES**

5
*Churchill Vill. L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)............................................................................................... 6, 9

6

7
*Cohen v. DirecTV, Inc.*,
   178 Cal. App. 4th 966 (2009) ...................................................................................... 11

8
*Ficalora v. Lockheed Cal. Co.*,
   751 F.2d 995 (9th Cir. 1985)...................................................................................... 13

9

10
*Hughes v. Microsoft Corp.*,
   No. C 98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ....................... 13

11

12
*In re Apple Inc. Sec. Litig.*,
   No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17,
   2011) ....................................................................................................................... 13

13

14
*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)...................................................................................... 13

15

16
*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)...................................................................................... 8

17
*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) ................... 8

18

19
*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997), *aff'd*,
   151 F.3d 1234 (9th Cir. 1998)...................................................................................... 8

20

21
*Maloney v. Verizon Internet Servs., Inc.*,
   413 F. App'x 997 (9th Cir. 2011) ................................................................................ 12

22

23
*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)...................................................................................... 11

24
*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)........................................................................................ 8

25

26
*Pfizer Inc. v. Superior Court*,
   182 Cal. App. 4th 622 (2010) ...................................................................................... 11

27
*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993).......................................................................................... 6

28

**TABLE OF CONTENTS**
**(continued)**

Page

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................................................... 13

**STATUTES**

28 U.S.C.
    § 1715(b) ................................................................................................................................ 7

Cal. Bus. & Prof. Code
    § 17200 .................................................................................................................................. 2
    § 17500 .................................................................................................................................. 2

Cal. Civ. Code
    § 1750.................................................................................................................................... 2

Class Action Fairness Act of 2005 ("CAFA").......................................................................... 7

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    § 23(b)(3) .............................................................................................................................. 6
    § 23(c)(2)(B) ......................................................................................................................... 6
    § 23(e)(2)................................................................................................................................ 7

1
## I.       PRELIMINARY STATEMENT

2        Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") files this

3   memorandum in support of the proposed settlement of a class action regarding Unlimited Get It

4   Now ("GIN") games.  The settlement is clearly "fair, reasonable, and adequate."

5   Notwithstanding Verizon Wireless's strong defenses, the settlement provides for significant cash

6   payments to the Settlement Class Members.  Moreover, the Settlement Class Members have

7   reacted positively to the settlement.  Although hundreds of thousands of account holders in the

8   Settlement Class were sent mailed or e-mailed notice, there are *no* objections and *only one* opt-

9   out.  Under applicable law, this response is a substantial factor favoring final approval.

10        The lawsuit alleged that Verizon Wireless failed to adequately disclose that Unlimited

11  GIN games would not be automatically transferred when the subscriber purchased a new mobile

12  telephone ("handset").  In fact, however, Verizon Wireless provided multiple express disclosures

13  in a number of documents, both on its website and in its stores, making clear that Unlimited GIN

14  games would *not* be transferred to a new handset free of charge.  Plaintiff's claims that

15  subscribers were actually misled regarding this issue are weak, as is demonstrated by the absence

16  of objections and the single opt-out and by the relatively low claim rate notwithstanding the

17  substantial cash payments available under the settlement.  No consumer reasonably believed that

18  downloading an Unlimited GIN game onto one handset entitled that consumer to transfer that

19  game to every future handset in perpetuity.

20        The settlement terms are not only "fair, reasonable, and adequate," they are generous.

21  Settlement Class Members who state in a claim form that they believed the Unlimited GIN

22  game(s) purchased on a handset would be transferable to a subsequent handset receive $15 even if

23  they did not repurchase any GIN games.  Settlement Class Members who merely list the games

24  they repurchased after acquiring a new handset receive the value of the listed games up to a

25  maximum of $35, with no requirement of proof of purchase.  Settlement Class Members who

26  include proofs of purchase for the games they repurchased after acquiring a new handset receive

27  the total value of the repurchased games with *no* cap on the amount.

28        The settlement is "fair, reasonable, and adequate" and should receive final approval.

1
## II.    BACKGROUND

2
### A.    Plaintiff's Claims

3
Plaintiff's core allegation is that Verizon Wireless misrepresented the scope of the

4
Unlimited purchase option by stating in an online FAQ that this option "provides access for

5
whenever and however long a customer wishes to play a game for a one-time fee."  (Am. Compl.

6
¶ 2 [Dkt No. 15].)  Of course, this statement says nothing whatsoever about use of the GIN game

7
on a subsequent handset, is quoted out of context, and ignores Verizon Wireless's clear

8
disclosures that Unlimited GIN games may *not* be transferred to a new handset.  Plaintiff argues

9
that the statement is misleading when juxtaposed against the statement that the "Subscription"

10
option applies only to the original handset to which the application is downloaded.  (*Id*. ¶ 3.)  But

11
there is no such juxtaposition:  the two statements appear several sections apart in the online

12
FAQ.  (Declaration of Penelope A. Preovolos in Support of Final Settlement Approval

13
("Preovolos Decl."), Ex. D at VZW 01579 and VZW 01581.)  Plaintiff further alleges that

14
Verizon Wireless improperly fails to disclose that if a customer purchases an Unlimited game, the

15
customer may use the game only on the original handset to which the game is downloaded.  (Am.

16
Compl. ¶ 4.)  In fact, the disclosure appears not only in this same online FAQ but in numerous

17
other places.

18
Plaintiff purports to state claims on behalf of a class of California consumers who

19
purchased an Unlimited GIN game and subsequently replaced the original handset onto which the

20
game was downloaded, from April 24, 2005 through final resolution of the lawsuit.  Plaintiff

21
alleges claims under California's Unfair Competition Law, California Business and Professions

22
Code section 17200 *et seq*. (the "UCL"), California's False Advertising Law, California Business

23
and Professions Code section 17500 *et seq*. ("FAL"), California's Consumer Legal Remedies Act,

24
California Civil Code section 1750 *et seq*. ("CLRA"), negligent misrepresentation, and

25
intentional misrepresentation.

26
### B.    Get It Now Games

27
Verizon Wireless is a provider of wireless communications services in the United States.

28
Among the services that Verizon Wireless makes available to its customers are GIN applications,

1   such as ring tones, wallpaper, and games (the application at issue in this case), that may be

2   downloaded onto the handsets of Verizon Wireless subscribers.  GIN games may be purchased

3   directly from GIN-enabled handsets or by ordering a game on Verizon Wireless's website.

4           Various pricing options are available for purchasing GIN games.  For example, under the

5   "Subscription" option, subscribers may purchase a game for a limited period with charges

6   recurring on a daily, monthly, or annual basis.  In contrast, under the "Unlimited" option,

7   subscribers may use a game for as long as they keep the handset for a one-time, rather than a

8   recurring, fee.  Although the fees for different games vary, the recurring fee under the

9   "Subscription" option is lower than the one-time fee under the "Unlimited" option.  Regardless of

10  which pricing option is selected by the subscriber, all GIN games are locally downloaded onto a

11  particular handset and can only be used on the handset to which the game was downloaded.

12          Verizon Wireless subscribers receive disclosures regarding the term of the "Unlimited"

13  GIN option in numerous documents.  For example, when subscribers sign up for cellular service

14  and purchase a GIN-enabled handset, they receive the current GIN terms and conditions at the

15  time of purchase.  The GIN brochures in effect during the class period contained the following (or

16  a similar) disclosure: "When downloading Get It Now applications, including content such as

17  games, Ringtones and wallpaper, those applications can only be used on the device to which they

18  were downloaded, even if downloaded pursuant to an unlimited or other long-term agreement.

19  No transfers, credits or refunds are permitted."  (Preovolos Decl., Ex. A at VZW 00128.)

20          In addition to the clear statements in the materials provided to subscribers at the time of

21  purchase, the terms and conditions governing GIN applications also appear on Verizon Wireless's

22  website and on subscribers' handsets.  The GIN Terms and Conditions on Verizon Wireless's

23  website state in the very first paragraph:

24                  You agree: (1) to use Applications only on the phone to which they
                    are downloaded, even if downloaded pursuant to an unlimited or
25                  other long-term agreement and no transfers, credits or refunds are
                    permitted . . . .
26
    (*Id*., Ex. B at VZW 01584.)  A link to the GIN Terms and Conditions appears at the bottom of at
27
    least three screens the customer must see to purchase an Unlimited game on the website.  In bold
28

DEF.'S MEMO. IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT                        3
CASE NO.  C09-02712-RS
sf-3204519

1    letters, the subscriber is notified that the purchase of the Unlimited game is "Subject to additional

2    Terms and Conditions," and the subscriber may easily access those Terms and Conditions by

3    clicking once on the link.  (*Id*., Ex. C at VZW 01588-90.)

4         Moreover, during the class period, the Get It Now FAQ page on the Verizon Wireless

5    website has contained the following Q and A (or similar language):

6         Q:  What happens if I get a new Get It Now-enabled handset?

7         A:  When you upgrade to a new Get It Now-enabled phone, you
              will have to manually delete the applications on your previous
8              handset and reinstall those application[s] to the new handset.
              Application and airtime charges apply.

9
     (*Id*., Ex. D at VZW 01579.)  This same Q and A can also be read on many GIN-enabled handsets
10
     through an easily accessible "Help" feature or by accessing the website through the handset.
11
     Thus, subscribers were given notice on numerous occasions through various means that the
12
     Unlimited games they purchased could only be used on the handset to which the games were
13
     downloaded.
14
           **C.      The Settlement Negotiations**
15
           On December 12, 2009, the parties participated in a day-long mediation before the Hon.
16
     William Cahill (ret.) of JAMS.  (Preovolos Declaration ¶ 2.)  The parties agreed on a basic
17
     structure for a settlement during the mediation, but a number of settlement terms remained in
18
     dispute.  (*Id*.)  The parties continued to negotiate following the mediation and reached agreement
19
     on certain deal terms in August 2010, which were set forth in a Memorandum of Understanding
20
     ("MOU").  (*Id*.)  Thereafter, the parties negotiated the contents of the settlement documents, open
21
     terms, and the fee amount for plaintiff's counsel.  (*Id*.)  Despite Verizon Wireless's continuous
22
     efforts, it was unable to reach agreement with plaintiff's counsel respecting the settlement
23
     documents and all material terms of the settlement.  (*Id*.)  Having reached an impasse, Verizon
24
     Wireless filed a motion to enforce its arbitration agreement with plaintiff Mahbod Khalilpour on
25
     September 16, 2011; plaintiff filed a motion to enforce the MOU.  The Court denied Verizon
26
     Wireless's motion and granted plaintiff's motion.  Verizon Wireless appealed, and the parties
27
     continued their discussions regarding the open terms in the settlement.  (*Id*. ¶ 3.)  These
28

DEF.'S MEMO. IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT                          4
CASE NO.  C09-02712-RS
sf-3204519

1    discussions were successful; the settlement agreement was signed on May 17, 2012, and the

2    appeal was subsequently dismissed.  In the Settlement Agreement, Verizon Wireless agreed not to

3    oppose payment of plaintiff's attorney's fees and expenses in an amount not to exceed $645,000

4    and an incentive award to plaintiff not to exceed $5000, as ordered and approved by the Court.

5    (Settlement Agreement and Release ("Settlement Agreement") ¶¶ 9.1-9.2 [Dkt. No. 95-1].)

6         **D.    The Settlement Class**

7         The Settlement Class consists of California residents who purchased Unlimited GIN

8    games on a handset and subsequently purchased one or more new handsets that were activated on

9    the same mobile telephone line between January 1, 2004 and June 22, 2012 (the date of

10   preliminary approval).  (*Id*. ¶ 1.17.)  Verizon Wireless's records are maintained according to

11   subscriber phone lines.  These records show that at least 1.2 million subscriber phone lines, which

12   are encompassed within approximately 980,000 subscriber accounts, fall within the definition of

13   the Settlement Class.

14        **E.    Key Settlement Terms**

15        The Settlement Agreement provides for generous cash benefits.  Settlement Class

16   Members who submit a straightforward claim form stating that they believed the Unlimited GIN

17   game(s) purchased on a handset would be transferable to their subsequent handset will receive

18   $15, even if they never repurchased any games on a subsequent handset.  (Settlement Agreement

19   ¶ 3.1.)  Settlement Class Members need not provide any information regarding the games they

20   purchased to receive the cash benefit.  Settlement Class Members who merely list the games they

21   repurchased after acquiring a new handset will receive the value of the listed games, up to a

22   maximum of $35.  (*Id*.)  Settlement Class Members who include proofs of purchase for the games

23   they repurchased after acquiring a new handset will receive the total value of the repurchased

24   games, with *no* cap on the amount of such a claim.  (*Id*.)  As of October 17, 2012, the Claims

25   Administrator has received 2,774 claims.  (Declaration of Ricky Borges in Support of Final

26   Settlement Approval ("Borges Decl.") ¶ 7.)  The Claims Period runs until 180 days after final

27   approval of this class action settlement.  (Settlement Agreement ¶ 5.10.)

28

1    Under the settlement, Verizon Wireless also agreed to make changes to its Frequently

2  Asked Questions on www.verizonwireless.com and www.vzw.com.  Verizon Wireless agreed to

3  state affirmatively and conspicuously on any sections of its websites pertaining to Unlimited GIN

4  games that downloaded content and applications may only be used on the device to which they

5  are downloaded, and that if a user changes devices, the user will need to re-download the content

6  and pay for the game again.  Verizon Wireless will also include this statement in any written

7  materials regarding Unlimited GIN games provided to subscribers at Verizon Wireless retail

8  stores.  (Settlement Agreement ¶ 3.4.)

9    **F.    Preliminary Approval**

10    The Court held a hearing on plaintiff's unopposed motion for preliminary approval of the

11  settlement on June 21, 2012.  The Court granted preliminary approval on June 22, 2012.  (*See*

12  Order Preliminarily Approving Settlement, Certifying the Settlement Class, and Providing for

13  Notice and Hearing [Dkt. No.  98].)

14    **G.    Class Notice**

15    The Class Notice met the requirements of due process and of Federal Rule of Civil

16  Procedure 23(b)(3).  Courts must direct to class members "the best notice that is practicable under

17  the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Such notice must contain basic information

18  about the class action and class members' rights.  The Ninth Circuit has further required that

19  notice to absent class members "'generally describe[] the terms of the settlement in sufficient

20  detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"

21  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (citation omitted); *Churchill*

22  *Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Notice here satisfied these

23  requirements.

24    Notice of the proposed settlement was widely disseminated to potential Settlement Class

25  Members.  A copy of the Summary Notice was directly emailed to the account holders identified

26  through Verizon Wireless's database as potential Settlement Class Members who had registered

27  for paperless billing and had provided Verizon Wireless with an email address.  (Borges Decl. ¶

28  5.)  Further, a copy of the Summary Notice, with a Claim Form on the back page of the Summary

1    Notice, was sent as a bill insert to the account holders identified through Verizon Wireless's

2    database as potential Settlement Class Members who had registered for paper billing.

3    (Declaration of Maria Koller in Support of Final Settlement Approval ("Koller Decl.") ¶ 2.)

4    Additionally, the Summary Notice was published in a Sunday edition of the following California

5    publications with broad circulation: *San Francisco Chronicle, Los Angeles Times, Sacramento*

6    *Bee, San Diego Union Tribune, San Jose Mercury News*, and *Redding Record Searchlight*. (*Id*. ¶

7    4.)

8            The Claims Administrator created a dedicated website for this settlement, which included

9    instructions on how to object or opt out of the settlement, as well as a downloadable copy of the

10   Claim Form and an online claim form option. (Borges Decl. ¶ 3.) The Claims Administrator also

11   established a toll-free telephone number through which Settlement Class Members could request

12   the Full Notice and Claim Form. (*Id*. ¶ 4.) The Full Notice and Claim Form were mailed, at

13   Verizon Wireless's expense, to any Settlement Class Member who called the toll-free telephone

14   number. (*Id.*) Notice of the proposed settlement, which included a link to the dedicated

15   settlement website, was also posted on the Legal Notices page on Verizon Wireless's website.

16   (Koller Decl. ¶ 3.)

17           The Class Action Fairness Act of 2005 ("CAFA") additionally requires that class action

18   defendants notify appropriate government officials of any proposed settlement. 28 U.S.C.

19   § 1715(b). On May 25, 2012, pursuant to CAFA, Verizon Wireless sent a Notice of Class

20   Settlement to the California Attorney General. (Preovolos Decl. ¶ 9 & Ex. E.) The Notice

21   provided instructions for accessing a copy of the Complaint, and enclosed the Settlement

22   Agreement and all exhibits thereto. (*Id*.) The California Attorney General has not objected to the

23   settlement. (*Id*.)

24   **III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

25           A court may approve a settlement that binds class members only after a hearing and a

26   finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Federal

27   law favors settlements in class action cases: "the court's intrusion upon what is otherwise a

28   private consensual agreement negotiated between the parties to a lawsuit must be limited."

1   *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982); *see also In re*

2   *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("strong judicial policy . . . favors

3   settlements") (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As the

4   Ninth Circuit emphasized in *Officers for Justice,* the trial court must scrutinize the settlement

5   simply "to the extent necessary to reach a reasoned judgment that the agreement is not the

6   product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

7   settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  688 F.2d at 625.

8          **A.      The Settlement Is Entitled to a Presumption of Fairness**

9          A presumption of fairness exists where experienced class counsel are involved and the

10  settlement is reached through arm's-length negotiations after relevant discovery has taken place.

11  *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at \*16

12  (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *In re Wells Fargo Loan*

13  *Processor Overtime Pay Litig.,* No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at \*24-25

14  (N.D. Cal. Aug. 2, 2011).  Here, each of these criteria is easily met.  The attorneys representing

15  the class were well informed.  The settlement was the product of arm's-length—and quite

16  contentious—negotiations spanning a full day of mediation and over two years of further

17  negotiations.  (Preovolos Decl. ¶¶ 2-4.)  Finally, class counsel had completed sufficient

18  investigation and discovery to adequately evaluate the settlement.  Verizon Wireless provided

19  plaintiff with approximately 2,500 pages of extensive pre-mediation and confirmatory discovery

20  concerning plaintiff's account activity; GIN games, disclosures, practices, and costs; and a

21  declaration on key issues regarding the terms governing the transferability of GIN games.  (*Id.*

22  ¶ 4.)

23         **B.      Even Without a Presumption of Fairness, the Settlement Is "Fair,
                   Reasonable, and Adequate" Under the Criteria Applied in the Ninth Circuit**
24
           In the Ninth Circuit, the factors that courts consider in assessing the fairness,
25
    reasonableness, and adequacy of a settlement are:  (1) the strength of the plaintiff's case; (2) the
26
    risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining
27
    class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of
28

1    discovery completed and the stage of the proceedings; (6) the experience and views of counsel;

2    and (7) the reaction of the class members to the proposed settlement. *Churchill Vill.*, 361 F.3d at

3    575-76.[1]  In addition, "the settlement may not be the product of collusion among the negotiating

4    parties." *Id.* at 576 (citing *Class Plaintiffs*, 955 F.2d at 1290).  Each of these factors supports

5    approval of the settlement in this case.

6                           **1.      The Strength of Plaintiff's Case**

7              Plaintiff's case was extremely weak.  Plaintiff alleged only misrepresentation-based

8    claims, but could point to no misrepresentation or omission.  Plaintiff claimed that Verizon

9    Wireless misrepresented that subscribers who purchased "Unlimited" GIN games could transfer

10   their games free of charge when they purchased new mobile telephones.  *But plaintiff never*

11   *identified any such representation because Verizon Wireless never made any such representation.*

12   To the contrary, Verizon Wireless provided multiple express disclosures stating that Unlimited

13   GIN games could *not* be transferred to a new handset.  And even without such disclosures, no

14   reasonable consumer could believe that electing an "Unlimited" as opposed to a specified-term

15   payment plan gave the consumer the right to transfer a game to an infinite number of new mobile

16   telephones.  Yet that was precisely plaintiff's claim.

17             The *only* Verizon Wireless representation plaintiff identified was the following

18   explanation of the difference between the "Subscription" and "Unlimited" payment plans in the

19   online FAQ.  Plaintiff's complaint took the discussion of the "Unlimited" plan entirely out of

20   context; but in context, the relevant representation reads as follows and is in no way misleading:

21                        What's the difference between "subscription" and "unlimited"?

22                        • Purchasing a "subscription" provides access to a game for a
                          limited period of time with billing reoccurring on a daily, monthly
23                        or annual basis depending on the specific game.

24                        • The "Unlimited" option provides access whenever and however
                          long you wish to play the game for a one-time fee.
25

26   ───────────────────
     [1] In *Churchill Village*, the court identified an eighth "non-exclusive" factor, the presence of a
     governmental participant.  361 F.3d at 575-76.  This factor is inapplicable to this case, and is thus
27   not considered here.  *Id.* at 576 n.7.

28

1     (Preovolos Decl., Ex. D at VZW 01581.)

2     In context, the phrase "one-time fee" is contrasted against the recurring fee charged under the

3     "Subscription" option. It cannot be read to suggest that subscribers may use an Unlimited game

4     on every subsequent handset they own in perpetuity for a "one-time fee."

5        In any event, Verizon Wireless expressly and repeatedly disclosed that Unlimited GIN

6     games were *not* transferable to a new handset. The GIN game brochure provided to subscribers at

7     the time they purchased a GIN-enabled handset contained the following (or a similar) disclosure:

8     "When downloading Get It Now applications, including content such as games, Ringtones and

9     wallpaper, those applications can only be used on the device to which they were downloaded,

10    *even if downloaded pursuant to an unlimited or other long-term agreement.* No transfers, credits

11    or refunds are permitted." (Preovolos Decl., Ex. A at VZW 00128 (emphasis added).) Similarly,

12    the GIN Terms and Conditions on Verizon Wireless's website state in the very first paragraph

13    that:

14
         You agree: (1) to use Applications only on the phone to which they
         are downloaded, even if downloaded pursuant to an unlimited or
15       other long-term agreement and no transfers, credits or refunds are
         permitted . . . .
16
   (*Id*., Ex. B at VZW 01584.) Finally, during the class period, the FAQ page of the Get It Now
17
   website has contained the following Q and A (or similar language):
18
         Q: What happens if I get a new Get It Now-enabled handset?
19
         A: When you upgrade to a new Get It Now-enabled phone, you
20       will have to manually delete the applications on your previous
         handset and reinstall those application[s] to the new handset.
21       Application and airtime charges apply.

22    (*Id*., Ex. D at VZW 01579.) This same Q and A can also be read on many GIN-enabled handsets

23    through an easily accessible "Help" feature or by accessing the website through the handset.

24        Accordingly, plaintiffs could not have maintained an affirmative misrepresentation claim.

25    Nor, given Verizon Wireless's express disclosures, could they have succeeded on an omissions

26    claim. There were no omissions, only clear disclosures.

27        Moreover, it is highly unlikely that the overwhelming majority of the purported class ever

28    saw the single representation in the online FAQ regarding the "unlimited" plan plaintiff purports

1   to rely on.  A plaintiff who was not exposed to a specific representation that is claimed to be

2   misleading does not have a misrepresentation claim.  *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th

3   966, 978-79 (2009); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631 (2010).  Nor would

4   plaintiff have been able to demonstrate reliance on representations respecting Unlimited GIN

5   games.  Given that the vast majority of class members never *saw* the alleged misrepresentation,

6   they could not have relied on it.  This fact bars their claims.  *Mazza v. Am. Honda Motor Co.*, 666

7   F.3d 581, 595 (9th Cir. 2012).

8   **2.      Risk, Complexity, Duration, and Expense of Further Litigation**

9           If plaintiff had not entered into the present settlement, plaintiff and the Settlement Class

10  Members would almost certainly have been required to arbitrate their claims, and their class

11  claims would have been barred.  Thus, there would have been *no* recovery for the class.  In the

12  unlikely event that plaintiff and the purported class were able to avoid their binding obligation to

13  arbitrate their claims, this would have been lengthy and hard-fought litigation.  Plaintiffs would

14  have been required to engage in substantial additional preparation and discovery.  Among other

15  things, plaintiffs would have been required to review a large volume of documents; depose

16  numerous witnesses; prepare and present documentary evidence; and identify, prepare, and

17  present expert reports and testimony.  And Settlement Class Members would likely have received

18  no benefit had the case gone to trial, given the weakness of the claims.  In contrast, the settlement

19  will yield a prompt, certain, and substantial recovery for the class.

20  **3.      Likelihood of Maintaining Class Certification**

21          Plaintiff would not have been able to certify a class.  As an initial matter, plaintiff's

22  arbitration agreement required him to pursue arbitration and barred him from pursuing class

23  litigation.  In any event, plaintiff could never have demonstrated that the majority of the class was

24  exposed to or relied on the single representation he identifies in the online FAQ and, accordingly,

25  he could not have certified a class.  *Mazza*, 666 F.3d at 595.  Similarly, to pursue either a

26  misrepresentation or omissions claim on a classwide basis, plaintiff would have had to

27  demonstrate that each class member did *not* see Verizon Wireless's numerous express disclosures

28  that Unlimited GIN games could not be transferred.  Such disclosures negate reliance, which was

1    required for all of plaintiff's claims.  *See Maloney v. Verizon Internet Servs., Inc.,* 413 F. App'x

2    997, 999-1000 (9th Cir. 2011).  That determination would have required individual inquiry of

3    each class member and would have precluded predominance of common issues and defeated class

4    certification.  In short, plaintiff could not have certified a class.

### 4.    Settlement Value

6    The settlement offers substantial cash relief to the Settlement Class Members.  Settlement

7    Class Members who purchased a GIN game and later purchased a new handset can claim $15

8    cash even if they never repurchased a GIN game.  Settlement Class Members who simply list the

9    GIN games they repurchased can claim $35 cash with no proof of purchase.  Settlement Class

10   Members who provide proof of purchase can claim an *unlimited* cash amount.  In short, the

11   settlement provides significant value to Settlement Class Members.

12   The settlement also provides additional, non-monetary relief.  Verizon Wireless agreed to

13   affirmatively and conspicuously disclose on any sections of its websites pertaining to Unlimited

14   GIN games that downloaded content and applications may only be used on the device to which

15   they are downloaded, and that if a user changes devices, the user will need to re-download the

16   content and pay for it again.  Verizon Wireless also agreed to include this statement in any written

17   materials regarding Unlimited GIN games that are provided to subscribers at Verizon Wireless

18   retail stores.

19   That relatively few claims have been received under the settlement is not surprising.  In

20   order to make a claim, Settlement Class Members must state that they believed that they could

21   transfer Unlimited GIN games to a new handset without additional charge.  Given that Verizon

22   Wireless never represented that this was the case and expressly disclosed that it was *not* the case,

23   it is unlikely that many Settlement Class Members could represent that they held such a belief.  If

24   they did not hold such a belief, they were not misled and had no claim in the litigation.

### 5.    Extent of Discovery and Stage of the Proceedings

26   As discussed above, Verizon Wireless provided plaintiffs with extensive pre-mediation

27   and confirmatory discovery.  (Preovolos Decl. ¶ 4.)  Plaintiffs had more than ample information

28

1    with which to evaluate the strength of the case, as well as the reasonableness and adequacy of the

2    settlement.

### 6.    The Experience and Views of Counsel

4        Experienced counsel for both parties recommend approval of the settlement.

### 7.    The Reaction of Settlement Class Members

6        As discussed above, there were at least 1.2 million subscriber lines in the settlement class

7    contained within at least 980,000 accounts, many of which received direct notice.  Yet there were

8    *no* objections and only a single opt-out.  This is an unprecedentedly favorable class response.  It

9    compellingly demonstrates that the settlement is fair, reasonable, and adequate.  *See In re Mego*

10    *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objections supporting

11    finding that settlement was fair); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96,

12    118 (2d Cir. 2005) (18 objections out of 5 million class members is evidence of "overwhelming[]

13    . . . approval").

### 8.    The Settlement Is the Product of Arm's-Length Negotiations

15        The settlement here is the product of extensive arm's-length negotiations among well-

16    informed, sophisticated counsel.  Both sides have demonstrated that they were fully prepared to

17    litigate this case through final judgment if no acceptable resolution could be reached.  *See*

18    *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985) (stating that "[b]efore

19    approving a class action settlement, the district court must reach a reasoned judgment that the

20    proposed agreement is not the product of fraud or overreaching by, or collusion among, the

21    negotiating parties").

22        Here, counsel participated in intense and contentious settlement negotiations over a period

23    of over two years.  Moreover, the basic settlement structure was established with the assistance of

24    the Hon. William Cahill (ret.) of JAMS.  *See In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF

25    (HRL), 2011 U.S. Dist. LEXIS 52685, at *10 (N.D. Cal. May 17, 2011) ("Because the settlement

26    is the product of a formal mediation session and several months of negotiations conducted at

27    arm's length, the Court is satisfied that the settlement is not the product of collusion."); *Hughes v.*

28    *Microsoft Corp.,* No. C 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 26,

1    2001) (settlement mediated with assistance of appointed settlement judge demonstrates lack of

2    fraud or collusion).

3    **IV.    CONCLUSION**

4         The proposed settlement is fair, reasonable, and adequate.  It appropriately reflects the

5    legal realities of plaintiff's case, and provides substantial benefits to any Settlement Class

6    Member who believes he or she was actually misled.  Verizon Wireless respectfully requests that

7    the Court approve the settlement and enter final judgment.

8

9                                               Respectfully Submitted,

10

11

12   DATED:  October 18, 2012                **MORRISON & FOERSTER LLP**

13                                           By:  ___/s/ Penelope A. Preovolos_____
                                                  Penelope A. Preovolos

14                                           Attorneys for Defendant
15                                           CELLCO PARTNERSHIP d/b/a Verizon Wireless

16

17

18

19

20

21

22

23

24

25

26

27

28